## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

**FEDERAL TRADE COMMISSION,**          )
                                       )
                                       )
                         **Plaintiff,**  )          **Case No. 4:96CV02225 SNL**
                                       )
           **v.**                      )
                                       )          **Judge Limbaugh**
**RICHARD C. NEISWONGER, *et al.,***    )
                                       )
                         **Defendants.**  )
_____)

### (Proposed)
### *EX PARTE* TEMPORARY RESTRAINING ORDER
### WITH ANCILLARY EQUITABLE RELIEF

On February 28, 1997, pursuant to the stipulation of the parties, this Court entered its

Final Judgment and Order for Permanent Injunction ("Permanent Injunction") in this case.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), has moved for an *ex parte*

Temporary Restraining Order with Ancillary Equitable Relief and an Order to Show Cause why

Defendant Richard C. Neiswonger ("Neiswonger"), William S. Reed ("Reed"), and Asset

Protection Group, Inc. ("APG" or "Receivership Defendant") (collectively, "Contempt

Defendants"), should not be held in civil contempt for violating that Permanent Injunction.

The Court has considered Plaintiff's Motion for Temporary Restraining Order with

Ancillary Equitable Relief, and the declarations, exhibits, and memorandum of law submitted in

support thereof, and finds as follows:

1.     This Court has jurisdiction over this matter for all purposes, as specifically reserved in Paragraph XIII ("Retention of Jurisdiction") of the Permanent Injunction.

2.     There is good cause to believe that Contempt Defendants have actual notice of the Permanent Injunction and the ability to comply with that order.

3.     There also is good cause to believe that Contempt Defendants have violated, and continue to violate, the Permanent Injunction. The evidence submitted with Plaintiff's *ex parte* Motion for Temporary Restraining Order and its Motion for Order to Show Cause, and the supporting memoranda, shows that Contempt Defendants have engaged in prohibited activity in advertising, marketing, promoting, and selling the APG training and business opportunity program, in violation of Paragraphs I and II of this Court's Permanent Injunction. There is also good cause to believe that Contempt Defendant Neiswonger has further violated the Permanent Injunction by failing to provide proof of a current $100,000 performance bond before marketing the APG Program, in violation of Paragraph V of the Permanent Injunction.

4.     The FTC has not provided notice to Contempt Defendants of its Motions due to the likelihood that advance notice of this action will lead to the dissipation of assets and the destruction of property or evidence. The FTC's request for *ex parte* relief is premised on Contempt Defendants' continuing order violations, their touted expertise in protecting assets from seizure, and their prior records of dishonest conduct relating to the concealment of assets. Based on the foregoing, there is good cause to issue this order on an *ex parte* basis.

5.     The Court has considered the FTC's likelihood of ultimate success and weighed the equities, and finds that a temporary restraining order providing for an asset freeze, the appointment of a temporary Receiver, the preservation of business records, financial disclosures,

2

expedited discovery, and other equitable relief is in the public interest.

6.    FED. R. CIV. P. 65(c) does not require security of the United States or an officer or agency thereof.

## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

A.    "APG Program" means the training and business opportunity program marketed and sold by Contempt Defendants, including the training session, course of instruction, class material, and business affiliation provided therein.

B.    "Assets" means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Contempt Defendants, or held for the benefit of Contempt Defendants, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts, and all cash and currency, or other assets, or any interest therein, wherever located.

C.    "Contempt Defendants" means Richard C. Neiswonger, William S. Reed, and Asset Protection Group, Inc., and each of them, individually and jointly, and their successors and assigns.

D.    "Document" shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise) of any written, typed, printed, transcribed, taped, recorded, computer-stored, or graphic matter of any kind, including but not limited to any books, records, writings, correspondence, handwritten notes, appointment books, day books, diaries, receipts and receipt books, cancelled checks and

3

check registers, bank statements, accounting data, ledgers, corporate documents, tax returns, contracts, files, invoices, tabulations, phone logs, phone scripts, advertisements, marketing materials, membership records and lists, refund records, drawings, graphs, charts, photographs, audio and video recordings, manuals, guides, outlines, code books, electronically-stored records, computer media, servers, e-mail, print-outs, and any other kinds of data compilations or papers.

E.      "Program" means any training session, course of instruction, class material, computer software, affiliation, association, newsletter, period of support, joint venture opportunity or combination thereof advertised, marketed, offered or sold by any of the Contempt Defendants.

F.      "Receiver" or "Temporary Receiver" shall mean the temporary receiver appointed in Paragraph V of this Order. The term "temporary receiver" also includes any deputy receivers or agents as may be named by the temporary receiver.

G.      "Receivership Defendant" means Asset Protection Group, Inc. and its subsidiaries, affiliates, divisions, successors, and assigns.

## I.
## CONDUCT PROHIBITIONS

**IT IS HEREBY ORDERED** that Contempt Defendants, their successors and assigns, officers, agents, servants and employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, in connection with advertising, promoting, marketing, offering for sale, selling, or otherwise inducing participation in the APG Program or any other program are hereby temporarily restrained and enjoined from:

4

A.     misrepresenting, directly or by implication, any material fact, including, but not limited to, any representation that consumers will earn a six-figure income, a $150,000 income, or words of similar import, from participation in any program; and

B.     failing to disclose to consumers in advance of any purchase all material facts, including, but not limited to, the amount of remuneration or any other benefit received by each reference whose name is provided to the prospective purchaser.

## II.
## ADDITIONAL CONDUCT PROHIBITIONS
## WITH RESPECT TO DEFENDANT NEISWONGER

Defendant Neiswonger is further temporarily restrained and enjoined from advertising, marketing, offering for sale or selling the APG Program or any other program until he provides proof of a performance bond in the principal sum of $100,000, made in favor of the Federal Trade Commission for the benefit of any party injured as a result of any violation of the Permanent Injunction.

## III.
## ASSET FREEZE

**IT IS FURTHER ORDERED** that Contempt Defendants are hereby temporarily restrained and enjoined from directly or indirectly:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are (1) owned or controlled, directly or indirectly, by any Contempt Defendant, in whole or in part, or held, in whole or in part for the benefit of Contempt Defendants; (2) in the

5

actual or constructive possession of any Contempt Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Contempt Defendant, including but not limited to, any assets held by, for, or under the name of any Contempt Defendant at any bank, savings and loan institution, or Contempt Defendant bank, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

B. Opening or causing to be opened any safe deposit boxes titled in the name of any Contempt Defendant, or subject to access by Contempt Defendants;

C. Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Contempt Defendant;

D. Obtaining a personal or secured loan;

E. Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly of any Contempt Defendant; and

F. Cashing any checks from consumers for programs or asset protection products or services, or any combination thereof.

The assets affected by this Paragraph shall include (a) all assets of Contempt Defendants as of the time this Order is entered; and (b) those assets obtained after entry of this Order that are derived from any conduct that violates the Permanent Injunction. This Paragraph does not prohibit transfers to the Receiver, as specifically required in Paragraphs VII and XI of this Order.

6

## IV.
## RETENTION OF ASSETS BY FINANCIAL INSTITUTIONS
## AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, escrow agent, title company, commodity trading company, trust, entity, or person that holds, controls or maintains custody of any account or asset owned or controlled by any Contempt Defendant, or has held, controlled or maintained any account or asset of, or on behalf of, any Contempt Defendant at any time since the entry of this Court's Permanent Injunction on February 28, 1997, upon service with a copy of this Order, shall:

A.     Hold and retain within its control and prohibit Contempt Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any of the assets, funds, or other property held by or on behalf of any Contempt Defendant in any account maintained in the name of or for the benefit of any Contempt Defendant, in whole or in part, except:

1.     as directed by further order of the Court;

2.     as directed in writing by the Receiver (regarding assets held in the name or for the benefit of Receivership Defendants); or

B.     Deny the Contempt Defendants access to any safe deposit box titled in the name of any Contempt Defendant, individually or jointly, or subject to access by any Contempt Defendant, whether directly or indirectly;

C.     Provide counsel for Plaintiff[1] and the Receiver, within three (3) business days

---

[1]     Counsel for Plaintiff means FTC attorneys Joshua S. Millard and Melinda A. Claybaugh, and any other FTC attorneys who appear in this action after the entry of this Order. Counsel for Plaintiff's mailing address for all materials mailed pursuant to this Order is 601 New

7

after being served with a copy of this Order, a certified statement setting forth:

    1.    the identification number of each such account or asset titled (1) in the name, individually or jointly, of any Contempt Defendant; (2) held on behalf of, or for the benefit of, any Contempt Defendant; (3) owned or controlled by any Contempt Defendant; or (4) otherwise subject to access by any Contempt Defendant, directly or indirectly;

    2.    the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

    3.    the identification of any safe deposit box that is either titled in the name of any Contempt Defendant, or is otherwise subject to access by any Contempt Defendant;

    4.    if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

    D.    Provide counsel for Plaintiff or the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit

---

Jersey Ave., N.W., Suite NJ-2122, Washington, D.C. 20001. Counsel for Plaintiff's fax number is (202) 326-2558.

8

and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; *provided that* such institution or custodian may charge a reasonable fee not to exceed ten cents per page copied.

E. Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

## V.
## APPOINTMENT OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that _Robb  Evans_ is appointed temporary Receiver for Receivership Defendant Asset Protection Group, Inc., and any affiliates or subsidiaries thereof that the Receivership Defendant controls, with the full power of an equity Receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all local rules and laws governing federal equity receivers.

## VI.
## DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Defendant by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of the Receivership Defendant, including any Contempt Defendant(s), from control of, management of, or participation in, the affairs of the Receivership Defendant.

B. Take exclusive custody, control and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendant, wherever

9

situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendant and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendant.

C. Take all steps necessary to secure the business premises of the Receivership Defendant, which may include, but are not limited to, taking the following steps as the Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendant, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendant. Such authority shall include, but not be limited to, the authority to order any owner, director, or officer of any Receivership Defendant to remove him or herself from the business premises.

D. Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the

10

assets and preventing transfer, withdrawal, or misapplication of assets.

E. Enter into contracts and purchase insurance as advisable or necessary.

F. Prevent the inequitable distribution of assets and to determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendant.

G. Manage and administer the business of the Receivership Defendant until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents.

H. Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.

I. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendant prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendant, such as rental payments.

J. Collect any money due or owing to the Receivership Defendant.

K. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and

11

advisable to preserve or recover the assets of the Receivership Defendant or to carry out the Receiver's mandate under this Order.

L.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendant or the Receiver, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendant or to carry out the Receiver's mandate under this Order.

M.      Continue and conduct the businesses of the Receivership Defendant in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the assets of the receivership estate, and lawfully, if at all.

N.      Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order and the Permanent Injunction. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver.

O.      Open one or more bank accounts as designated depositories for funds of the Receivership Defendant. The Receiver shall deposit all funds of the Receivership Defendant in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.

P.      Maintain accurate records of all receipts and expenditures made by the Receiver.

## VII.
## DELIVERY OF RECEIVERSHIP PROPERTY

IT IS FURTHER ORDERED that immediately upon service of this Order upon them,

12

the Contempt Defendants, including the Receivership Defendant, shall forthwith or within such time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.    All funds, assets, and property of the Receivership Defendant, whether situated within or outside the territory of the United States, which are: (1) held by Receivership Defendant, individually or jointly, (2) held for the benefit of Receivership Defendant, or (3) under Receivership Defendant's direct or indirect control, individually or jointly;

B.    All documents of the Receivership Defendant, including but not limited to all books and records of assets including funds and property, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title documents, and electronic records;

C.    All funds and other assets belonging to members of the public now held by the Receivership Defendant;

D.    All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of the Receivership Defendant, wherever situated; and

E.    Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendant.

## VIII.
## TRANSFER OF FUNDS TO THE RECEIVER
## BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, or

13

trust shall cooperate with all reasonable requests of counsel for Plaintiff and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendant.

## IX.
## COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Contempt Defendants shall fully cooperate with and assist the Receiver. Contempt Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files or information in any medium; or advising all persons who owe money to the Receivership Defendant that all debts should be paid directly to the Receiver. Contempt Defendants are hereby restrained and enjoined from directly or indirectly:

A.     Transacting any of the business of the Receivership Defendant;

B.     Excusing debts owed to the Receivership Defendant;

C.     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendant;

D.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendant, or the Receiver;

E.     Failing to notify the Receiver of any asset, including accounts, of a Receivership

14

Defendant held in any name other than the name of the Receivership Defendant or by any person or entity other than the Receivership Defendant or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; or

F.      Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendant; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

This Paragraph does not prohibit transfers to the Receiver, as specifically required in Paragraphs VII and XI of this Order.

## X.
## FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that each Contempt Defendant shall, within two (2) business days after service of this Order, prepare and serve on counsel for Plaintiff and the Receiver:

A.      Completed financial statements fully disclosing their own finances and those of all corporations, partnerships, trusts or other entities that they now own, control, or are associated with in any capacity on the forms attached to this Order as **Attachments A and B**, accurate as of the date of service of this Order upon Contempt Defendants; and

B.      Copies of signed and completed federal and state income tax forms, including all

15

schedules and attachments for the three most recent filing years.

Contempt Defendants shall provide copies of such other financial statements as the Receiver or Plaintiff may, from time to time, request in order to monitor Contempt Defendants' compliance with the provisions of this Order.

## XI.
## FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, within three (3) business days following the service of this Order, each Contempt Defendant shall:

A.    Provide counsel for Plaintiff and the Receiver with a full accounting of all funds and assets outside of the territory of the United States which are held either: (1) by Contempt Defendant; (2) for Contempt Defendant's benefit; or (3) under Contempt Defendant's direct or indirect control, individually or jointly, as required by the forms included in **Attachments A and B**;

B.    Transfer to the territory of the United States all such funds and assets in foreign countries; and

C.    Hold and retain all repatriated funds and assets, and prevent any transfer, disposition, or dissipation whatsoever of any such assets or funds, except as required by this Order.

Contempt Defendants shall provide access to records and documents held by financial institutions outside the territorial United States, by signing the Consent to Release of Financial Records attached to this Order as **Attachment C**, immediately upon service of this Order upon them, or within such time as permitted by the Receiver or counsel for Plaintiff in writing.

16

## XII.
## NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Contempt Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph XI of this Order, including but not limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Paragraph XI of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph XI of this Order.

## XIII.
## RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction or the hearing to Show Cause regarding the Contempt Motion, whichever occurs first, on: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendant; (3) the sum of all liabilities of the Receivership Defendant;

17

(4) the steps the Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Defendant; (b) pursue receivership assets from third parties; and (c) adjust the liabilities of the Receivership Defendant, if appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention. Provided, however, if any of the required information would hinder the Receiver's ability to pursue receivership assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## XIV.
## RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $*100,000* with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XV.
## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of- pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendant. The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Paragraph XIII. The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

18

## XVI.
## RECEIVER AND COMMISSION ACCESS TO
## BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that Contempt Defendants shall allow counsel for

Plaintiff, the Receiver, and their respective representatives, agents, contractors, or assistants,

immediate access to any business premises and storage facilities owned, controlled, or used by

the Receivership Defendant as well as any other location where the Receivership Defendant has

conducted business and where property or business records are likely to be located. Such

locations include, but are not limited to, the offices and facilities of the Receivership Defendant

at or in the vicinity of 4601 West Sahara Avenue, Las Vegas, NV, 89102.

Counsel for Plaintiff and the Receiver are authorized to employ the assistance of law

enforcement officers as deemed necessary, to effect service and to implement peacefully the

provisions of this Order. The Receiver shall allow counsel for Plaintiff into the premises and

facilities described in this Paragraph and shall allow counsel for Plaintiff and its representatives,

agents, contractors, or assistants to inspect, inventory, and copy documents relevant to any matter

contained in the Permanent Injunction. Counsel for Plaintiff and the Receiver may exclude

Contempt Defendants and their agents and employees from the business premises and facilities

during the immediate access.

Contempt Defendants and all agents or employees of Contempt Defendants shall provide

counsel for Plaintiff and the Receiver with any necessary means of access to documents,

including, without limitation, the locations of Contempt Defendants' business premises, keys and

combinations to business premises locks, computer access codes of all computers used to

conduct Receivership Defendant's business, and storage area access information.

19

The Receiver and counsel for Plaintiff shall have the right to remove any documents related to Contempt Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within three (3) business days of completing said inventory and copying.

If any property, records, documents, or computer files relating to the Receivership Defendant's finances or business practices are located in the residence of any Contempt Defendant or are otherwise in the custody or control of any Contempt Defendant, then such Contempt Defendant shall produce them to the Receiver within twenty-four (24) hours of service of this Order.

## XVII.
## DEFENDANTS' ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver shall allow the Contempt Defendants and their representatives reasonable access to the premises of the Receivership Defendant. The purpose of this access shall be to inspect, inventory, and copy any and all documents and other property owned by or in the possession of the Receivership Defendant, provided that those documents and property are not removed from the premises. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVIII.
## PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Contempt Defendants and their successors, assigns, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, directly or through any corporation or other device, are temporarily restrained and enjoined from

20

destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Contempt Defendant.

## XIX.
## DISCOVERY

**IT IS FURTHER ORDERED** that Plaintiff is permitted to conduct the following expedited discovery:

A. Depositions and subpoenas related to the assets of Contempt Defendants; and

B. Depositions of Contempt Defendants and their employees related to Contempt Defendants' compliance with the Court's Permanent Injunction. Plaintiff is granted leave, pursuant to the Federal Rules of Civil Procedure 30(a), to take ~~said~~ *any* depositions in any judicial district, at any time after the date of this Order, upon three (3) calendar days' notice.

## XX.
## CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning any of Contempt Defendants to counsel for Plaintiff or the Receiver.

## XXI.
## BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the Receivership Defendant is hereby prohibited from filing a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

21

## XXII.
## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.     Except by leave of this Court, during the pendency of the Receivership ordered herein, Contempt Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Contempt Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees be and are hereby stayed from:

1.     Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.     Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

3.     Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.     Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the assets or documents subject to this

22

receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendant.

B.     This Paragraph does not stay:

1.     The commencement or continuation of a criminal action or proceeding;

2.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.     The commencement of any action by the Secretary of the United States Department of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units; or

5.     The issuance to a Contempt Defendant of a notice of tax deficiency.

## XXIII.
## SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, by employees or agents of the FTC or the Receiver, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Contempt Defendants, or that may otherwise be subject to

23

any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXIV.
## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT(S)

**IT IS FURTHER ORDERED** that each Contempt Defendant, within three (3) business days of receipt of this Order, must submit to counsel for Plaintiff a truthful sworn statement acknowledging receipt of this Order.

## XXV.
## PROOF OF DISTRIBUTION OF
## TEMPORARY RESTRAINING ORDER
## BY CONTEMPT DEFENDANTS

**IT IS FURTHER ORDERED** that Contempt Defendants shall immediately provide a copy of this Order to their agents, servants, employees, consultants, and any affiliated businesses, and other persons and entities subject in any part to their direct or indirect control. Within five (5) business days of receipt of this Order, Contempt Defendants must submit to counsel for Plaintiff a truthful sworn statement identifying those persons and entities to whom this Order has been distributed.

## XXVI.
## EXPIRATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein expires ten (10) days after entry unless, within such time, the Order, for good cause shown, is extended for an additional period not to exceed ten (10) days, or unless it is extended with the consent of the parties.

24

## XXVII.
## ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that each of the Contempt Defendants shall appear

before this Court on the 26th day of _July_, 2006, at _9:00_ a.m. at the Thomas F.

Eagleton Courthouse of the United States District Court for the Eastern District of Missouri, 111

South 10th Street, Room _____, St. Louis, MO 63102, to show cause, if any there be, why this

Court should not enter a Preliminary Injunction, pending a final ruling on Plaintiff's Motion for a

Civil Contempt Order against Contempt Defendants.

## XXVIII.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** the Court shall continue to retain jurisdiction of this

matter for all purposes.

**IT IS SO ORDERED,** this 17th day of _July_, 2006, at _3_, P.m.

STEPHEN N. LIMBAUGH
Senior United States District Judge
United States District Court for the
Eastern District of Missouri

25