UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 4:96CV2225SNLJ |
| ) | |
| **RICHARD C. NEISWONGER, ET. AL.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the FTC's motion for contempt of amended contempt order (#297), filed September 19, 2008.[1] On April 20, 2009 this Court held a hearing on the instant motion, and gave all interested parties the opportunity to be heard on the motion. At that time, it was stipulated by the interested parties that the scope of the instant motion had been narrowed down to one issue; i.e. the alleged failure of defendant Neiswonger to turn over to the Receiver title to the real property located at 9509 Verlaine Court, Las Vegas, Nevada, identified in defendant Neiswonger's sworn financial statement dated August 2, 2006. Furthermore, it was revealed for the first time that a problem had arisen with regard to transferring the title to the subject real estate regarding Shannon Neiswonger's (defendant's spouse) interest in the subject real estate. After an exhaustive discussion regarding this "problem," the Court postponed its ruling on the instant motion until such time further discovery could be had regarding Mrs.

---

[1] Although he has not filed an independent motion, the Receiver had filed a memorandum in support of the FTC's motion for contempt of amended civil contempt order (#346), filed July 13, 2009.

Neiswonger's interest in the residence, and to allow Mrs. Neiswonger the opportunity to protect her alleged interest by retaining the services of counsel and informing the Court directly as to the merits of her interest in the residence. Finally, the Court set the matter for another hearing on September 14, 2009.

On September 14, 2009 counsel for the FTC, for the Receiver appeared in court; as well as defendant Neiswonger and his counsel. Neither Mrs. Neiswonger nor any counsel on her behalf appeared in court. Furthermore, a review of the court docket indicates that neither Mrs. Neiswonger (acting *pro se*) nor any counsel on her behalf filed any memoranda (including any motion to intervene) with this Court indicating her position on the matter of transferring the residence to the Receiver.[2] The Court heard extensive oral argument by counsel for all interested parties on the matter as to whether defendant Neiswonger has fully complied with the Court's Amended Contempt Order (#275), filed July 30, 2008 by "attempting" to convey good and marketable title to the subject property to the Receiver.

After careful consideration of the matter, pursuant to oral argument at the hearings of April 20, 2009 and September 14, 2009, and review of the interested parties' extensive briefing of the matter, the Court finds that defendant Neiswonger in contempt of the Court's Amended Civil Contempt Order (#275) for failing to convey good and marketable title to the residence located at 9509 Verlaine Court, Las Vegas, Nevada.

It is undisputed that the Court's Amended Civil Contempt Order (#275) clearly directed

---

[2]On September 10, 2009 defendant Neiswonger filed a Motion to Vacate 9/14/09 Hearing in which he attached a copy of a complaint recently filed by Shannon Neiswonger against the FTC, the Receiver, and other unknown entities in the Nevada state court. *See*, Document #363, Exhibit B. The crux of this Nevada state court action is the transfer of title to the residence located at 9509 Verlaine Court to the Receiver by virtue of this federal action.

defendant Neiswonger to transfer the title to the Verlaine Property.[3]

> "Neiswonger shall, upon the expiration of 20 days after entry of this Order, cause to be transferred to the Receiver, <u>in a form satisfactory to the Receiver</u>, title to the real property located at 9509 Verlaine Court, Las Vegas, NV 98145, identified in Neiswonger's sworn financial statement dated August 2, 2006. The Receiver shall sell the property, use the proceeds of the sale to pay any legitimate liens and necessary expenses in connection with such sale, and add the resulting proceeds, less any administrative expenses of the Receiver, to the receivership estate. Any transfer fees, taxes, or other payments mandated from a transferor by law shall be paid from the proceeds of the sale at the time the property is sold."

Amended Civil Contempt Order (#275), §II.B.3.(emphasis added). Defendant Neiswonger contends that he had done everything possible to convey this property. The Court disagrees.

It is clear that since the inception of the present lawsuit regarding defendant's contempt of the 1997 Stipulated Final Judgment and Order for Permanent Injunction, the defendant has engaged in suspect activities regarding this property, including but not limited to, an attempt to sell the property in April 2007 (after the original Civil Contempt Order was entered invoking an asset freeze). He now contends that the property is held in trust (the SRN Trust), he has resigned as a trustee under the trust, and that his wife Shannon is the only one as Trustor that can convey (or must also convey) title to the Verlaine Property.

The manner is which the defendant "resigned" his trusteeship under the SRN Trust is highly suspect, and by all accounts, ineffectual. According to the express terms of the SRN Trust, trustees have the power to act individually or unilaterally to sell and/or exchange all trust

---

[3]The Court's original Order of Civil Contempt (#123), filed April 23, 2007 and Amended Order of Civil Contempt (#275) were recently affirmed by the Eighth Circuit Court of Appeals in <u>Federal Trade Commission v. Richard C. Neiswonger, et. al.</u>, - F.3d. - (Case No. 08-3077, entered September 9, 2009).

3

property.  Plaintiff's Exhibit D (SRN Trust Instrument), Section 11.1.  On April 18, 2007, after the exhaustive briefing and argument on the matter of defendant's alleged violations of the 1997 Stipulation and Permanent Injunction and five (5) days prior to the Court's formal order of civil contempt, Neiswonger executed a brief written statement resigning as trustee of the SRN Trust.  However, contrary to Nevada law, this statement of resignation was not notarized nor recorded at the time it was executed.  Instead, it wasn't until April 2008 (after the Civil Contempt Order was entered and after pleadings had been filed with the Court as to a proposed Amended Civil Contempt Order) that the statement of resignation was recorded in Nevada.  Furthermore, the only affirmation as to when this statement of resignation was purportedly signed by defendant is his wife Shannon's notarized affidavit of May 3, 2007 which was recorded along with the statement in April 2008.

*Assuming arguendo* that defendant Neiswonger did in fact resign as a trustee under the SRN trust, he never resigned as a Trustor under the SRN Trust.  As a Trustor under the SRN Trust, the defendant can remove the Verlaine Property from the Trust on his own by signing a document to that effect.  The SRN Trust states, in pertinent part:

> "<u>Power to Revoke</u>.  During the joint lifetime of Trustors, the Trustors may revoke this Trust Indenture with regard to the community property of Trustors by an instrument in writing, signed by both Trustors jointly or by either Trustor alone.  Upon revocation, the Trustee shall deliver the community property or the revoked portion of the community property to both of the Trustors as the community property of both Trustors.  With respect to the separate property of either Trustor, either Trustor may revoke the Trust as to his or her separate property.  Upon revocation; the Trustee shall deliver the separate property or the revoked portion of the separate property to the Trustor who transferred the separate property into the trust."

Plaintiff's Exhibit D (SRN Trust Instrument), Article III, Section 3.2.

Once the defendant or the defendant and his wife revoke the SRN Trust (as Trustor or Trustors), the Verlaine Property becomes community property.[4] As community property in Nevada, it can be transferred to the Receiver, even though Shannon Neiswonger is not a party to this lawsuit. "Nevada is a community property state, and under the law of Nevada, `community property is subject to a spouse's debt irrespective of whether both spouses were a party to the action.'" FTC v. Neiswonger, et. al., - F.3d. - (8th Cir. September 9, 2009), pg. 1l *quoting* Jones v. Swanson, 341 F.3d. 723, 738 n.6 (8th Cir. 2003)(*citing* Randano v. Turk, 466 P.2d. 218, 224 (Nev. 1970); *see also*, Cirac v. Lander County, 602 P.2d. 1012, 1017 (Nev. 1979)(noting "community property of spouses may be subject to liability of judgments whether or not the wife was a party to the suit."(citation omitted)).

Thus, the defendant clearly has avenues open to him to transfer this property to the Receiver as directed in the Amended Civil Contempt Order (#275).

Furthermore, the Receiver has tendered to the defendant certain documents for Shannon Neiswonger's signature to effectuate the turnover of the Verlaine Property with marketable title as directed in the Amended Civil Contempt Order. These documents consist of 1) a grant-bargain-sale deed and a declaration of value for the Verlaine Property; and 2) and a deed of full reconveyance of Rishne's lien[5] on the property. Defendant has offered no evidence that he ever

---

[4]Technically, the Verlaine Property has always been considered as community property by the defendant and his wife. *See*, Plaintiff's Exhibit J - Schedule A of the SRN Trust.

[5]Evidently, shortly after acquiring the Verlaine Property and conveying it to the SRN Trust, the Neiswongers, as trustees of the SRN Trust executed a deed of trust in the amount of $1.975 million in favor of Rishne L.P. Rishne L.P. is a limited partnership with the Neiswongers as the limited partners. Numerous documents have been filed with the Court with conflicting

5

sought or is willing to seek his wife's signature on these documents.

Defendant will make every attempt to obtain his wife's signature on these documents. However, barring his successful attempts on his own, the Court will direct Shannon Neiswonger to execute any and all documents necessary to effectuate the transfer of marketable title to the Receiver for the residence located at 9509 Verlaine Court, Las Vegas, Nevada. Once this Court established a receivership for the defendant's assets, all property in the possession of defendant passed into the custody of the receivership court (this Court) and became subject to its authority and control. As such, pursuant to the exercise of its broad equitable powers to protect the assets of the receivership estate, this Court may order non-parties to turn over receivership assets to the Receiver. *See*, Federal Trade Commission v. Productive Marketing, Inc., 136 F.Supp.2d. 1096 (C.D.Calif. 2001); Federal Trade Commission v. Pacific First Benefit, L.L.C., et. al., 472 F.Supp.2d. 981 (N.D.Ill. 2007); Eller Industries v. Indian Motorcycle Manufacturing, 929 F.Supp. 369 (D.Col. 1995); *see also*, Federal Trade Commission v. Vocational Guides, Inc., 2009 WL 943486 (M.D.Tenn. April 6, 2009). Permitting Shannon Neiswonger to retain the residence which is properly part of the receivership estate would thwart the purpose of the receivership to provide adequate redress to those who were defrauded by defendant Neiswonger. *See*, FTC v. Productive Marketing, at 1106. Furthermore, for the FTC to engage in further independent litigation against Shannon Neiswonger in order to obtain a court-ordered asset of the receivership

---

descriptions as to the nature of Rishne and the respective partnership interests of defendant and his wife Shannon. Notably, throughout their deposition testimony, defendant and his wife generally profess little, if any, knowledge of Rishne and its alleged business activities. More importantly, there is little evidence (documentary or testimonial) of any consideration for the monies "loaned" to the SRN Trust by Rishne thereby creating this "lien". Again, a suspect transaction involving the Verlaine Property perpetrated by the defendant.

estate "would result in a multiplicity of actions in different forums, and would increase litigation costs for all parties while diminishing the size of the receivership estate." FTC v. Productive Marketing, at 1106 *quoting* SEC v. Universal Financial, 760 F.2d. 1034, 1038 (9th Cir. 1985).

Accordingly,

**IT IS HEREBY ORDERED** that the FTC's motion for contempt of Amended Civil Contempt Order (#297) be and is **GRANTED**. The Court finds defendant Neiswonger to be in civil contempt for failing to deliver marketable title to the residence located at 9509 Verlaine Court, Las Vegas, Nevada as directed to in the Court's Amended Civil Contempt Order (#275).

**IT IS FURTHER ORDERED** that defendant Neiswonger shall revoke, as Trustor, the SRN Trust, thereby subjecting the afore-referenced real property to the community property laws of the State of Nevada.

**IT IS FURTHER ORDERED** that Shannon Neiswonger, spouse of defendant Richard C. Neiswonger, shall immediately sign any and all documents tendered to her by the FTC and/or the Receiver to facilitate the transfer of marketable title to the residence located at 9509 Verlaine Court, Las Vegas, Nevada. Failure to comply with this Court's order risks the finding of civil contempt and the imposition of sanctions, including but not limited to, incarceration until such time the contempt is purged.

**IT IS FINALLY ORDERED** that defendant Richard C. Neiswonger shall fully comply with all directives as set forth in this Order on or before September 22, 2009. Upon failure to comply with this Court's order, defendant Neiswonger will be immediately taken into custody and incarcerated in a facility to be selected by the United States Marshal until such time he purges himself of contempt by complying fully with the directives of this Order.

Dated this 15th day of September, 2009.

                                         _____
                                         STEPHEN N. LIMBAUGH, JR.
                                         UNITED STATES DISTRICT JUDGE